TYMKOVICH, C.J., concurring.
The government cannot deport United States citizens, and the majority is right that Gonzalez-Alarcon must have an opportunity to make his case in front of an Article III court. I agree with most of the analysis in the majority opinion. I agree the REAL ID Act bars habeas review of Gonzalez-Alarcon's claim. And, as the majority notes, "there appears to be little dispute that a petition for review would provide an adequate substitute" for habeas *1280 review "if available." Maj. Op. at 1276-77. I also agree the exhaustion requirement of 8 U.S.C. § 1252(d)(1) does not apply to claims of citizenship. Maj. Op. at 1268-69, 1271-73.
I write separately to explain my understanding of the review process. While I agree with most of the majority's explanation of this process, I add that, in my view, Gonzalez-Alarcon has an additional opportunity for review through the N-600 application for a "certificate of citizenship." See 8 C.F.R. § 341.1.
* * *
Gonzalez-Alarcon has at least two routes for review before him. He can file a motion to reopen and appeal denials of his motion until he is able to request review from the Court of Appeals-which must consider his citizenship claim as a matter of jurisdiction. And Gonzalez-Alarcon can also file an N-600 application for a "certificate of citizenship."
Motion to Reopen
First, Gonzalez-Alarcon can file a motion to reopen or reconsider his removal order. If the immigration judge denies the motion, Gonzalez-Alarcon can appeal the denial to the Board of Immigration Appeals. If the Board also denies the motion, Gonzalez-Alarcon can seek review from the Court of Appeals. At that stage, since the Court of Appeals can always decide the jurisdictional fact of citizenship, Gonzalez-Alarcon could invoke 8 U.S.C. § 1252(b)(5), which requires the Court of Appeals to decide nationality claims. I explain how this works in more detail below.
As Judge Lucero notes, federal law allows aliens affected by a removal order to file a motion to reopen or reconsider with an immigration judge. 8 U.S.C. § 1229a(c)(6)-(7) ; 8 C.F.R. § 1003.23(b). The implementing regulations provide that "[a]n Immigration Judge may upon his or her own motion at any time, or upon motion of the Service or the alien, reopen or reconsider any case in which he or she has made a decision, unless jurisdiction is vested with the Board of Immigration Appeals." 8 C.F.R. § 1003.23(b)(1). Federal regulations also allow affected parties to file a motion to reopen or reconsider with the Board. Id. § 1003.2. This regulation also provides that "[t]he Board may at any time reopen or reconsider on its own motion any case in which it has rendered a decision." Id. § 1003.2(a).
This is the avenue Gonzalez-Alarcon must pursue, since, as the majority explains, the REAL ID Act bars habeas review. It appears from the record that Gonzalez-Alarcon never appealed his initial order of removal. App. 51. Consequently, he should file a motion to reopen under 8 C.F.R. § 1003.23 with the Immigration Court having administrative control over the Record of Proceeding.
Though there are two potential hurdles to review, both can be surmounted. First, as we have explained, the motion would now be untimely: 8 U.S.C. § 1229a(c)(7)(C)(i) and 8 C.F.R. § 1003.23(b)(1) require that a motion to reopen be filed within 90 days of the date of entry of the final order of removal. But, as the Ninth Circuit pointed out in Iasu v. Smith , alienage is also a jurisdictional prerequisite at the administrative level, because immigration judges and the Board do not have subject-matter jurisdiction over United States citizens . 511 F.3d 881, 893 (9th Cir. 2007) ; see also 8 U.S.C. § 1229a(a)(1) ("An immigration judge shall conduct proceedings for deciding the inadmissibility or deportability of an alien ." (emphasis added) ). For that reason, the immigration judge might reach Gonzalez-Alarcon's citizenship claim in spite of the timeliness bar.
Second, the regulatory provision allowing for the immigration judge to reopen or reconsider a case expressly prohibits a *1281 "motion to reopen or to reconsider ... by or on behalf of a person who is the subject of removal, deportation, or exclusion proceedings subsequent to his or her departure from the United States." 8 C.F.R. 1003.23(b)(1). This provision is often called the "regulatory departure bar."
But the Fifth Circuit, where Gonzalez-Alarcon must pursue review, has held this bar is none at all. Garcia-Carias v. Holder , 697 F.3d 257, 265 (5th Cir. 2012). Because in its view the regulatory bar contradicts Congress's express meaning in 8 U.S.C. § 1229a(c)(7), the "statutory right to file a motion to reopen is not trumped by the Board's departure regulation." Id.[1]
Yet even if the immigration judge denied the motion to reopen as either untimely or subject to the departure bar, Gonzalez-Alarcon could still obtain review. He can appeal to the Board. And if the Board upholds the denial, and declines to compel the immigration judge to reopen the proceedings, a Court of Appeals could still review the jurisdictional issue on direct appeal from that denial. Id. As the Iasu court explained: "At that point, the case would be in a procedural posture so that 8 U.S.C. § 1252(b)(5) and § 1252(a)(2)(D) could be invoked" and the citizenship question could be considered. Id.
That is because "[c]itizenship constitutes the denial of an essential jurisdictional fact in a deportation proceeding." Shepherd v. Holder , 678 F.3d 1171, 1175 (10th Cir. 2012) (internal quotation marks omitted) (quoting Duarte-Ceri v. Holder , 630 F.3d 83, 87 (2d Cir. 2010) ). A court of appeals always retains jurisdiction to determine jurisdictional facts, such as whether an individual subject to deportation is a U.S. citizen. See id. at 1180-81. So, if the immigration judge and the Board declined to grant Gonzalez-Alarcon any relief on his claim of U.S. citizenship, nothing would stop the Fifth Circuit from entertaining it at that stage. The Court of Appeals may then decide Gonzalez-Alarcon's nationality claim or, if there is a genuine issue of material fact, transfer the proceeding to the proper district court "for a new hearing on the nationality claim and a decision on that claim as if an action had been brought in the district court under [ 28 U.S.C. § 2201 ]." 8 U.S.C. § 1252(b)(5).
The motion-to-reopen procedure is therefore one way Gonzalez-Alarcon can get his Article III court review. And it would be review pursuant to the congressional framework we are obliged to follow.
N-600 Application
Gonzalez-Alarcon has an alternative means for relief under the legal framework governing nationality and citizenship claims. Gonzalez-Alarcon has not yet-but may at any time-file a Form N-600, "Application for Certificate of Citizenship," with the U.S. Citizenship and Immigration Services (USCIS). Approval of such an application would provide him the proof of citizenship he seeks and shield him from any threat of removal proceedings. If the application is denied, Gonzalez-Alarcon may file an appeal using USCIS Form I-290B. 8 C.F.R. § 103.3. And if that appeal is denied, Gonzalez-Alarcon may also choose to file a Form I-290B motion to reopen or reconsider. 8 C.F.R. § 103.5.
The majority opinion concludes the "certificate of citizenship" would do Gonzalez-Alarcon *1282 no good because it would not be an order compelling the government to release him. Maj. Op. at 1273-74. But if Gonzalez-Alarcon's application for certification of citizenship is approved, he will have obtained proper certification of his U.S. citizenship. Gonzalez-Alarcon will at that point be categorically ineligible for removal, and so will be released. And even if the government does not release him, Gonzalez-Alarcon can file a motion to reopen his case. Armed with the certificate, Gonzalez-Alarcon will have proof the government has no jurisdiction to deport him, Ng Fung Ho v. White , 259 U.S. 276, 284, 42 S.Ct. 492, 66 L.Ed. 938 (1922), and the immigration judge will have to address this question because it goes to subject matter jurisdiction. See Iasu v. Smith , 511 F.3d 881, 893 (9th Cir. 2007).
* * *
The bottom line is that Gonzalez-Alarcon must seek judicial relief through the proper statutory means-a petition for review in the appropriate court of appeals. "Congress' clear intent [was] to have all challenges to removal orders heard in a single forum (the courts of appeals)." Bonhometre v. Gonzales , 414 F.3d 442, 446 (3d Cir. 2005) (citation omitted). See also 8 U.S.C. § 1252(a)(5) ("[A] petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal.").
Gonzales-Alarcon has multiple paths to vindicate his claim of citizenship. If those fail, then the federal courts can entertain whether a petition for habeas corpus review is then an appropriate vehicle. But as the majority explains, Maj. Op. at 1268-69, 1279-80, we are not yet in a position to hold the existing opportunities for review are an inadequate substitute for the Great Writ.

In Hayman, the Court upheld a prior version of 28 U.S.C. § 2255, which replaced traditional habeas review for federal prisoners with a process allowing for a motion to be filed in the sentencing court. 342 U.S. at 207 n.1, 219, 72 S.Ct. 263. In Swain, the Court upheld a statute, patterned after § 2255, that transferred collateral review from the U.S. District Court for the District of Columbia to the D.C. Superior Court. 430 U.S. at 374-78, 97 S.Ct. 1224.